IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

FILED BY_____ _____ D.C.

05 SEP -2  AM 10: 05

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN. JACKSON

| | | |
|---|---|---|
| NERISSA DeBERRY, as parent | ) | |
| and next friend of THARRON | ) | |
| EUGENE POLLARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 04-1241-T-P |
| | ) | |
| THE BOARD OF EDUCATION | ) | |
| OF THE HENDERSON COUNTY | ) | |
| SCHOOLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON § 1983 CLAIMS AND REMANDING STATE LAW CLAIMS

---

Plaintiff Nerissa DeBerry filed this action on behalf of her son, Tharron Eugene

Pollard, in the Circuit Court of Henderson County, Tennessee. Plaintiff brought various

state law claims and a claim pursuant to 42 U.S.C. § 1983 against the Henderson County

Board of Education ("School Board"), Superintendent Susan Bunch, former Superintendent

Jimmy Fesmire, Dr. Reggie Henderson, chairman of the Henderson County Schools, David

Weatherford, individually and as principal of Pin Oak Elementary School, and Jerry Graves,

individually and as educational assistant at Pin Oak Elementary School. Defendants

removed the action to this court under 28 U.S.C. § 1441. Defendants have now filed a

motion for summary judgment. Plaintiff has not responded to the motion. For the reasons

set forth below, Defendants' motion is GRANTED on the § 1983 claims, and the state law claims are REMANDED to the Henderson County Circuit Court.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. To prevail on a motion for summary judgment, the moving party has the burden of showing the "absence of a genuine issue of material fact as to an essential element of the nonmovant's case." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The moving party may support the motion with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The opposing party may not rest upon the pleadings but, "by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

"If the defendant . . . moves for summary judgment . . . based on the lack of proof of a material fact, . . . [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter, however. Anderson, 477 U.S. at 249. Rather, "[t]he inquiry on a summary judgment motion . . . is . . . 'whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law.'" Street, 886 F.2d at 1479 (quoting Anderson, 477 U.S. at 251-52).

Doubts as to the existence of a genuine issue for trial are resolved against the moving party. Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970).

If a party does not respond to a motion for summary judgment, the Federal Rules of Civil Procedure provide that "summary judgment, if appropriate, shall be entered against him." Fed. R. Civ. P. 56(e). The fact that Plaintiff did not respond does not require granting Defendants' motion. However, if the allegations of the complaint are contravened by Defendants' affidavits and Defendants are entitled to judgment as a matter of law on those facts, then summary judgment is appropriate. Wilson v. City of Zanesville, 954 F.2d 349, 351 (6th Cir. 1992).

Section 1983 Claims

The complaint alleges as follows: Tharron Eugene Pollard[1] was enrolled in the Henderson County School System at Pin Oak Elementary School. On September 3, 2003, while in the class of Defendant Jerry Graves, Tharron raised his hand "to obtain assistance." Complaint at 7. Defendant Graves told Tharron to lower his hand. Tharron did not do so because "he still had a question and did not understand the material he had been given." Id. Defendant "physically lifted" Tharron, "pushed him into the middle of the classroom," and then "physically ejected him into the hallway." Id. at 8. In the hallway, Tharron was "grabbed, shaken, pushed, pulled, and thrown against the wall" by Defendant. Id.

---

[1] Tharron is now deceased.

3

The complaint further alleges that the incident was reported to Defendant David Weatherford, who was principal of the school. Defendant Weatherford investigated the matter and summarized the results of his investigation as follows:

> After talking to Mr. Graves it was discovered that this student [Tharron] had been a source of contention for several weeks. The child was expelling gas, turning around in his seat, raising his hand to ask questions that drew attention to him and generally disrupting class.
>
> Mr. Graves stated that he took the student by the arm and escorted him out of the class to talk to him. In his opinion, he did not exert enough force to inflict any pain or harm to this child.
>
> Further investigation found that some students felt that Mr. Graves may have been more forceful than he realized. They stated that the student was pulled from the desk and taken to the hall.
>
> Since there seems to be great contention between this student and the teacher, he has been transferred to class 7A. The constant acts of misbehavior appear to have created a lack of tolerance. This can be substantiated by problems that other teachers have also sited [sic] about this child.

Plaintiff's Exhibit B to Complaint.

Defendant Weatherford determined that Tharron should be moved to another class and not have any contact with Defendant Graves, unless another staff person was present. Defendant Weatherford apologized for "this incident." Id. at Exhibit A. Defendant Graves was told to "refrain from laying hands upon any student." Id. at Exhibit B.

Plaintiff and her husband presented a written letter of complaint to the Henderson County School Board on October 10, 2003. In that letter, they objected to the "vague letter of disciplinary action" that was placed in "Mr. Graves' folder." Id. at Exhibit C.

4

On December 3, 3003, the School Board determined that there was "not sufficient evidence to warrant Mr. Jerry Graves' suspension or removal from his teaching position," although Defendant "Graves did forcibly remove Tharron from his seat and forcibly escorted Tharron into the hallway." Id. at Exhibit D. The School Board further found that Defendant "Graves attempted to deal with a situation while angry and did not handle the situation in the most desirable manner." Id. The School Board could not substantiate that the bruise on Tharron's right arm was the result of this incident because the "majority of the interviewees said that Mr. Graves forcibly removed Tharron by the left arm." Id. The School Board concluded that Defendant Graves' disciplinary procedures should be "monitored for the remainder of [the] school year." Id.

The Henderson County Sheriff's Department was notified of the incident on September 6, 2003. The Sheriff's Department "put [their] criminal investigation concerning the matter on hold pending the outcome of [the School Board's] findings internally." Id. at Exhibit E. The complaint alleges that, because of the delay in the School Board's investigation, the findings of the Sheriff's Department could not be presented to a judge or magistrate within fifteen days as required by T.C.A. § 49-6-4105, "Arrest and prosecution for injury to student."

In addition to various state law claims, Plaintiff alleges that Defendants' actions violated Tharron's civil rights under 42 U.S.C. § 1983. Plaintiff alleges that Defendant Graves violated Tharron's civil rights by subjecting him to "physical assault and battery,

5

Complaint at 27, and that Defendants School Board, Weatherford, Bunch, and Fesmire violated his civil rights by failing to supervise, train, and remove Defendant Graves from his position with the school. Plaintiff also alleges that Defendants "knew that criminal charges would not be pressed without their consent" and "went so far as to reach an agreement with law enforcement to prevent the filing of formal charges and/or arrest of defendant Graves." Complaint at 35.

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under § 1983, plaintiff must allege and ultimately prove that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Haines v. Saginaw Police Dept., 35 F.3d 565 (6th Cir.1994). "Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate." Lewellen v. Metropolitan Gov't of Nashville, 34 F.3d 345, 347 (6th Cir.1994).

In the present case, Tharron was allegedly deprived of his Fourth Amendment right to be protected against unreasonable searches and seizures.[2]  Under the Fourth Amendment, a seizure occurs when a government official restrains a person's freedom of movement in such a way that a reasonable person in the same position would not feel free to walk away.

---

[2]  This amendment has been incorporated into the Due Process Clause of the Fourteenth Amendment and, thus, applies to state actors. See, e.g., Mapp v. Ohio, 367 U.S. 643 (1961).

See, e.g., Elwoski v. City of Brunswick, 287 F.3d 492, 506 (6ᵗʰ Cir. 2002) (citing Michigan v. Chesternut, 486 U.S. 567, 573 (1988)).  Plaintiff bases her claims of Fourth Amendment violations on the alleged seizure of Tharron when Defendant Graves took his arm and removed him from the classroom and the alleged battery that Tharron suffered in the school hallway.

In his deposition, Defendant Graves described the incident in question as follows. Tharron "was disturbing the class by passing gas," so they "went outside and [Defendant] talked to [Tharron]."  Graves Depo. at p. 9.  Defendant asked Tharron "not to do that anymore because it was hard to have class."  Id. Defendant escorted Tharron from the classroom by touching his wrist. Id. at p. 10.  Defendant did not pick up or lift Tharron, id., or shove him against a locker in the hallway.  Id.  Because Plaintiff has not refuted Defendant Graves' testimony as to the events in the hallway, Plaintiff cannot base her claim on allegations concerning the hallway events.[3]

Although Defendant Graves denies using any kind of force to remove Tharron from the classroom, other than touching his wrist, the School Board determined that there was evidence that Defendant "forcibly removed Tharron from his seat" and "forcibly escorted Tharron into the hallway," although the School Board could not determine that Tharron

---

[3] The only eyewitnesses to the incident were Defendant Graves and Tharron.  Tharron's deposition was, apparently, not taken before his untimely death.

received any physical injuries from the incident.[4]  Defendants' Exhibit E.

Although there is a dispute as to whether Defendant used some kind of force to remove Tharron from the classroom or merely took him by the wrist, this court cannot find that a teacher's pulling a disruptive student[5] from his seat and pushing him into the hallway, see Plaintiff's Depo. at p. 41, without any injuries, is the type of conduct prohibited by the Fourth Amendment.  See Nolan v. Isbell, 207 F.3d 1253 (11th Cir.2000) ("the application of de minimus force, without more, will not support a claim for excessive force in violation of the Fourth Amendment" ); Carter v. Morris, 164 F.3d 215 (4th Cir.1999) (claim that handcuffs were too tight was too insubstantial to state a claim of excessive force under the Fourth Amendment); Skinner v. City of Miami,62 F.3d 344 (11th Cir.1995) ("Skinner has proven that he was assaulted-that, however, is a tort created by state law, and not necessarily a violation of a constitutional right. Skinner has failed to show a violation of any right secured by federal law either under the Constitution or a federal statute.").

At most, Plaintiff has state law claims against Defendant Graves. Consequently, the motion for summary judgment as to Defendant Graves in his individual capacity under § 1983 is granted.

Defendant Weatherford is also sued in his individual capacity for negligently

---

[4]  In her deposition, Plaintiff testified that she noticed a spot on Tharron's back that was bleeding after the incident but Tharron did not know how he had gotten the injury.  Plaintiff's Depo. at p. 48.  Several days later, Plaintiff observed scratches on Tharron's arms and back; however, there is no evidence that the scratches were made by Defendant Graves.  Id. at 46-47.

[5]  Plaintiff has not refuted Defendant Graves' testimony that Tharron was making rude noises in the classroom.

supervising Defendant Graves. Plaintiff alleges that there had been "numerous complaints filed against [Defendant Graves] for inappropriate conduct, inappropriate physical contact and verbal abuse of students in his class." Complaint at 23. In her deposition, Plaintiff stated that, two years prior to this incident, she had seen Defendant Graves (1) "humiliate" students walking in the hallway by asking them "Don't you know how to walk? Can't you walk right," Plaintiff's Depo. at p. 21, and (2) push a student. Id. at p. 26. Plaintiff testified that she told Defendant Weatherford about the pushing incident. Id . at pp. 24-25.

When a plaintiff seeks to hold a school administrator individually liable for a constitutional injury caused by someone else, "supervisory liability" standards apply to the claim. Doe v. City of Roseville, 296 F.3d 431, 438-39 (6th Cir.2002). Supervisory liability under § 1983 must be based on "active unconstitutional behavior"; thus, the "mere failure to act" is insufficient. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir.1999) (citation omitted). "[T]here must be a direct causal link between the acts of individual officers and the supervisory defendants." Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir.1982).

In addition, a claim of failure to supervise under § 1983 cannot be based on simple negligence. Id. ("[S]imple negligence is insufficient to support liability of high police officials and municipalities for inadequate training, supervision, and control of individual officers.").

> [A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some way directly participated in it. At a minimum a plaintiff must show that the official

at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.

Id. at 874.

Supervisory liability will attach if the defendants possessed information revealing a "strong likelihood" of unconstitutional conduct by subordinates but did nothing to prevent the misconduct, thereby causing harm to the plaintiffs. City of Roseville, 296 F.3d at 439; Doe v. Claiborne County, Tenn., 103 F.3d 495, 513 (6th Cir.1996). A defendant cannot be found liable if he was merely "sloppy, reckless or negligent in the performance of [his] [supervisory] duties." City of Roseville, 296 F.3d at 439. Instead, a "plaintiff must show that, in light of the information the defendants possessed, the teacher who engaged in sexual abuse showed a strong likelihood that he would attempt to sexually abuse other students, such that the failure to take adequate precautions amounted to deliberate indifference to the constitutional rights of students." Id. (quotations omitted).

In the present case, Plaintiff has not alleged that Defendant Weatherford's liability is based on "active unconstitutional behavior." Instead, she bases her claim against Defendant on his alleged "failure to act," which is insufficient for supervisory liability under § 1983. Consequently, Defendant Weatherford, in his individual capacity, is entitled to summary judgment.

Defendants have moved for summary judgment on the claims brought against them in their official capacities.[6] Actions for damages against a defendant in his official capacity

---

[6] Defendants Graves and Weatherford were the only two defendants sued in their individual capacities.

are in essence actions against the governmental entity.  <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 , 690 n. 55 (1978).  Therefore, "[t]here is no longer a need to bring official-capacity actions against local government officials, for ... local government units can be sued directly for damages and injunctive or declaratory relief." <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14 (1985). Here, the official capacity designation is redundant because Plaintiffs have also named as a defendant the government entity.  Therefore, the motion for summary judgment as to the official capacity claims brought against the individual defendants is granted.

Plaintiff's claims against Defendant School Board must be dismissed because it cannot be held liable for the actions of its employees merely on the theory of respondeat superior.  The Sixth Circuit Court of Appeals has held that respondeat superior is not a basis for imposing liability on local governments. <u>White v. Gerbitz</u>, 892 F.2d 457, 462 (6th Cir. 1989); <u>Foster v. Walsh</u>, 864 F.2d 416, 419 (6th Cir. 1988).  Local governments cannot be sued under the civil rights statutes for the actions of their agents unless the actions represent official government policy or custom.[7] <u>Dorsey v. City of Detroit</u>, 858 F.2d 338, 345 (6th Cir. 1988) (quoting <u>Monell v. Department of Social Servs.</u>, 436 U.S. 658, 694 (1978)).  Here,

---

[7] Section 1983 liability need not be predicated upon written policies, but may arise from custom. <u>Monell</u>, 436 U.S. at 690-91. "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." <u>Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis</u>, 361 F.3d 898, 902 (6th Cir.2004). For a custom to give rise to <u>Monell</u> liability, the custom "must 'be so permanent and well settled as to constitute a custom or usage with the force of law.' " <u>Doe v. Claiborne County</u>, 103 F.3d 495, 507 (6th Cir.1996) (quoting <u>Monell</u>, 436 U.S. at 691). Such a custom "must include '[d]eeply embedded traditional ways of carrying out state policy.' " <u>Id.</u> (quoting <u>Nashville, Chattanooga & St. Louis Ry. Co. v. Browning</u>, 310 U.S. 362, 369 (1940)).

Plaintiff has not alleged that the actions of Defendant School Board's employees were taken pursuant to an official government policy or custom.

However, if Plaintiff had made such an allegation, she has failed to meet the standards set forth in <u>Doe v. Claiborne County Bd. of Educ.</u>, 103 F.3d 495 (6th Cir.1996), a teacher harassment case. In that case, after noting that § 1983 municipal liability requires proof of an unconstitutional policy, the court said:

> In addition to showing that the School Board as an entity "caused" the constitutional violation, plaintiff must also show a direct causal link between the custom and the constitutional deprivation; that is, she must " 'show that the particular injury was incurred because of the execution of that policy.' " <u>Garner v. Memphis Police Dep't</u>, 8 F.3d 358, 364 (6th Cir.1993)(emphasis added) (citation omitted), cert. denied,510 U.S. 1177, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). This requirement is necessary to avoid de facto respondeat superior liability explicitly prohibited by <u>Monell</u>.
>
> The analytical difficulty in this case stems from the type of "custom" that the plaintiff claims directly caused Davis to sexually abuse her. Doe does not claim that the School Board had a custom of affirmatively condoning sexual abuse. Clearly, no municipality could have such a policy. Rather, Doe claims that the custom was to fail to act to prevent the sexual abuse.
>
> To state a municipal liability claim under an "inaction" theory, Doe must establish:
>
> (1) the existence of a clear and persistent pattern of sexual abuse by school employees;
>
> (2) notice or constructive notice on the part of the School Board;
>
> (3) the School Board's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the School Board's custom was the "moving force" or direct causal

link in the constitutional deprivation.

> See City of Canton v. Harris, 489 U.S. 378, 388-89, 109 S.Ct. 1197, 1204-05, 103 L.Ed.2d 412 (1989); see also Thelma D. v. Board of Educ. of City of St. Louis, 934 F.2d 929, 932-33 (8th Cir.1991). The Monell custom requirement is an essential element of this claim. The evidence must show that the need to act is so obvious that the School Board's "conscious" decision not to act can be said to amount to a "policy" of deliberate indifference to Doe's constitutional rights. City of Canton, 489 U.S. at 389, 109 S.Ct. at 1205 "Deliberate indifference" in this context does not mean a collection of sloppy, or even reckless, oversights; it means evidence showing an obvious, deliberate indifference to sexual abuse.

103 F.3d at 508 (emphasis added). See also City of Roseville, 296 F.3d 431 (6th Cir.2002) (approving analysis articulated in Claiborne).

It is undisputed that the School Board investigated the incident in question and took action, such as ensuring that Tharron was not in Defendant Graves' classroom, monitoring Defendant's disciplinary procedures until the end of the school year, and placing a letter in Defendant's personnel file.  It is also undisputed that Plaintiff received an apology from school officials.  Plaintiff's complaint with the investigatory process were that (1) it took too long and (2) she believed that Defendant Graves should have been terminated.  Plaintiff's Depo. at p. 67-69.

Despite Plaintiff's dissatisfaction with the results of the investigation, she has not shown that the School Board showed deliberate indifference to Tharron's constitutional rights.  She has also not shown that the School Board had a custom or policy of ignoring or acquiescing in physical abuse of students by teachers or that the School Board was aware of any complaints about Defendant Graves, other than the one that she herself made.

13

Therefore, the School Board is entitled to summary judgment on the § 1983 claim.

Plaintiff also claims that Defendants "reached an agreement with law enforcement to prevent the filing of formal charges and/or arrest of defendant Graves." Complaint at 35. As evidence of this agreement, Plaintiff has attached a letter written to Defendant Fesmire by the Henderson County Sheriff. The letter states that <u>Sheriff Lunsford</u> put the criminal investigation "on hold" pending the outcome of the School Board's investigation. Exhibit E to Complaint. Thus, Plaintiff's own evidence belies her allegation.

Because the only evidence before the court concerning this allegation is this letter and because there is no rebutting evidence that Defendants asked Sheriff Lunsford to delay his investigation or that Defendants had any control over Sheriff Lunsford's actions, Defendants are entitled to summary judgment on this claim.

Defendants have moved to dismiss Plaintiff's demand for punitive damages against the School Board. In <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247 (1981), the United States Supreme Court held that punitive damages could not be awarded against local governments. Because the School Board is a governmental entity, punitive damages cannot be awarded against it. Therefore, Plaintiff's demand for punitive damages against the School Board is dismissed.

Defendants have refuted Plaintiff's allegations that they violated Tharron's constitutional rights. Consequently, they are entitled to summary judgment on the claims brought pursuant to 42 U.S.C. § 1983.

14

State Law Claims

Defendants have also moved for summary judgment on Plaintiff's state law claims. Because the § 1983 claims have been dismissed, there is no longer any basis for federal jurisdiction over this action, and the court declines to exercise supplemental jurisdiction over the remaining state law claims. See Federal Deposit Insurance Corp. v. Mulkey, 1989 WL 156572 (9th Cir.) (Although removal was proper after the IRS was brought in as a third party defendant, the district court subsequently dismissed the claims against the IRS and then refused to exercise supplemental jurisdiction and remanded the case to state court. "The district court acted consistently with the law in this circuit. We have held that it is inappropriate for a district court to retain jurisdiction solely for the purpose of deciding pendent state claims."); McQuain v. Ebner Furnaces, Inc., 55 F. Supp.2d 763 (N.D. Ohio 1999) (28 U.S.C. § 1447 provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Therefore, after dismissing the federal claims, the court declined to exercise supplemental jurisdiction over the state law claim and remanded the claim to state court.); Jacobs v. District Director of Internal Revenue, 217 F. Supp. 104, 106 (S.D.N.Y.1963) ("While dismissal of the complaint is the usual procedure where a court lacks jurisdiction over the subject matter, the better course in a removed action is to remand the suit to the state court from which it was removed.")

15

In summary, Defendants' motion for summary judgment on the claims brought pursuant to 42 U.S.C. § 1983 is GRANTED. The remaining state law claims are hereby REMANDED to the Circuit Court of Henderson County, Tennessee. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.


_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

_____
DATE

16

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 17 in case 1:04-CV-01241 was distributed by fax, mail, or direct printing on September 6, 2005 to the parties listed.

---

Jennifer Craig
WALDROP & HALL
106 S. Liberty Street
P.O. Box 726
Jackson, TN 38302--072

Kenny Cavness
Henderson County Courthouse
Lexington, TN 38351

William L. Johnson
LAW OFFICE OF WILLIAM L. JOHNSON
212 Adams Ave.
Memphis, TN 38103

Charles M. Purcell
WALDROP & HALL
106 S. Liberty Street
P.O. Box 726
Jackson, TN 38302--072

Honorable James Todd
US DISTRICT COURT